UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHERYL J. JOHNSON,

    Plaintiff,

  v.                                            Case No. 22-CV-579-SCD

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,

    **Defendant.**

## DECISION AND ORDER

    Plaintiff Cheryl Johnson applied for social security disability insurance benefits due to various musculoskeletal problems. Her claim was denied, and the denial was affirmed following a hearing before an Administrative Law Judge (ALJ) employed by the Social Security Administration (SSA).

    Johnson now seeks judicial review of the ALJ's decision based on the ALJ's inadequate consideration of Johnson's subjective allegations of pain and disability, the ALJ's failure to fully consider Johnson's partner's opinion statement, and the ALJ's failure to properly address the supportability and consistency of the medical opinions in the record. Kilolo Kijakazi, the Acting Commissioner of the SSA, maintains that the ALJ did not commit reversible error. I agree with Johnson that the ALJ erred by not fully considering her subjective complaints. Accordingly, I reverse and remand for the reasons further explained below.

# BACKGROUND

## I. Personal History

Cheryl Johnson applied for disability benefits on February 12, 2020 alleging disability due to back and hip pain, as well as fibromyalgia. *See* ECF No. 1. She alleges disability since February 3, 2020. R. 12.[1] At the time of hearing, she lived in Forestville, Wisconsin with her partner, Leanne LaCrosse, and LaCrosse's adult son. R. 34. Johnson worked as a loss prevention manager from 1997 to 2012, a role in which she monitored customers to ensure they were not shoplifting. R. 37. As Johnson's physical health deteriorated, she could no longer meet the physical demands of this job, so she quit. R. 38. She then began working as a cashier at Pick and Save. R. 39. Johnson testified that the standing and bending requirements of this job also caused her a lot of pain, so she eventually quit that job as well. R. 40. Johnson next worked as an administrative assistant but had to quit that job in February 2020 because sitting for long periods of time caused back pain. R. 41.

## II. ALJ Hearing

Johnson testified during a hearing before the ALJ on June 17, 2021. *See* R. 28-64. Johnson testified that she quit several jobs due to back pain. R. 38, 41. Johnson claimed that she needed assistance walking and could only stand or sit for about ten minutes at a time before needing to change positions due to discomfort. R. 38. Johnson testified that her pain was concentrated in her lower back and radiated into her legs. R. 42. She also experienced pain in her shoulders and neck; Johnson had previously undergone surgery to put a steel plate in her neck to address a pinched nerve in her spine. *Id.* Johnson testified that strength still

---

[1] The transcript is filed on the docket at ECF No. 9.

hasn't fully returned to her left arm since a separate surgery on her left shoulder. Id. She rated her pain at eight out of ten on an ongoing, consistent basis. R. 43.

Johnson also testified regarding her daily activities. Johnson used a cane and a walker prescribed by her physical therapist. R. 44, 49. Johnson testified that she could walk for about ten minutes with her walker before taking a ten-minute break. R. 44-45. She testified that she had not done chores or housework in about a year. R. 45. Johnson testified that she could not play on the floor with her four-year-old grandson or lift him up. *Id*. Johnson testified to difficulty performing personal care tasks like bathing without assistance. R. 46. Johnson claimed that she could not sleep through the night, and woke up four or five times a night, eventually moving to the couch to treat her pain with a heating pad. *Id*.

The ALJ also heard testimony from the VE. The VE classified Johnson's past work as that of a store detective and an administrative clerk. R. 53-54. The VE testified that a person of Johnson's age and experience with the same RFC as the one ultimately assigned to Johnson would be able to work as an administrative clerk, but not a store detective. R. 54. The VE testified that a person further limited by using a cane would not be able to perform that work as generally performed through the DOT. R. 55-56. The VE also testified that a person who always needed assistance getting up from her office chair would not be able to work as an administrative clerk. R. 63.

### III. ALJ Decision

In applying the five-step disability evaluation framework,[2] the ALJ found at step one that Johnson had not engaged in substantial gainful activity. R. 14. At step two, he found that Johnson had the following severe impairments: lumbar degenerative disc disease, cervical

---

[2] 20 C.F.R. § 404.1520(a)(4) outlines the process for evaluating a disability claim.

degenerative disc disease with history of C5-6 fusion, fibromyalgia, inflammatory arthritis, trochanteric bursitis of hips, and obesity. *Id*. The ALJ found that Johnson's thrombocytopenia, depression, and anxiety were all non-severe as they caused no significant functional limitations. *Id*. The ALJ went on to find that Johnson had no more than mild limitations in each of the paragraph B criteria. R. 15. The ALJ went on to find at step three that Johnson's impairments did not singly or in combination meet or equal a Listing-level impairment. R. 16.

The ALJ then found that Johnson had the RFC to perform light work with some additional limitations including standing and walking no more than four hours per day, only occasionally climbing ramps and stairs, only occasionally stooping, and frequently reaching overhead. R. 17. The ALJ found that while Johnson's medically determinable impairment could be expected to cause her symptoms, Johnson's statements about the severity and intensity of those symptoms were not entirely consistent with the record. R. 18-19. In particular, the ALJ emphasized that pre-alleged onset imaging revealed only mild to moderate degenerative changes in Johnson's spine and acknowledged other mild medical history. R. 19. The ALJ stated that X-rays following Johnson's injury did not show significant degenerative findings even after her fall on the ice. *Id*. The ALJ noted that medical records at the time showed poorly controlled fibromyalgia symptoms, but when treated with an increased dosage of medication, Johnson exhibited normal range of motion, muscle tone and sensation, only mild tenderness, and negative Romberg sign. *Id*. The ALJ also noted that Johnson demonstrated a normal range of motion in April 2021 and "was released to activity without restriction during that period." *Id*. (citing R. 478-479).

The ALJ considered the opinions of state agency medical consultants Dr. Shaw and Dr. Lipski, both of whom determined that Johnson was limited to light work with additional restrictions. *Id*. Based on Johnson's history of back problems and hip pain, the ALJ found that the greater limitations noted by Dr. Lipski were better supported than the less restrictive limitations found by Dr. Shaw. *Id*. The ALJ next considered a letter from Johnson's partner and former employer, who explained that Johnson's pain drastically interfered with her ability to work. *Id.* The ALJ found this letter to be unpersuasive because it was inconsistent with the mild to moderate diagnostic findings and intact motor function. R. 20.

The ALJ found at step four that Johnson was not disabled because she could perform her past work as an administrative clerk and accordingly found her non-disabled. *Id*.

The Appeals Council denied Johnson's request for review on April 1, 2022, *see* R. 1-6, making the ALJ's decision a final decision of the Commissioner. *See Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

On May 16, 2022, Johnson filed this action seeking judicial review of the decision denying her claim for disability benefits under 42 U.S.C. § 405(g). *See* ECF No. 1. Her case was assigned to Chief Judge Pepper, who reassigned it to me after all parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 3, 6, 7. Johnson filed a brief in support of her disability claim, ECF No. 12; Kijakazi filed a brief in support of the ALJ's decision, ECF No. 18; and Johnson filed a reply brief, ECF No. 21.

## APPLICABLE LEGAL STANDARDS

Under 42 U.S.C. § 405(g), a claimant may seek judicial review of a final administrative decision of the Social Security Commissioner. The court will reverse the Commissioner's final

decision only if the denial of disability benefits is "based on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Substantial evidence simply means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martin*, 950 F.3d at 373 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). The court "may not re-weigh the evidence or substitute its own judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). It is limited to evaluating whether the ALJ has built an "accurate and logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Even if the ALJ's decision is supported by substantial evidence, the court may reverse if the ALJ committed a legal error. *Lopez*, 336 F.3d at 539.

## DISCUSSION

Johnson believes that the ALJ erred in his evaluation of Johnson's subjective allegations, his consideration of the state agency medical consultants, and in his consideration of Johnson's partner's opinion. Because I agree that Johnson's subjective symptoms and daily activities warrant more searching consideration, I will remand this case for further consideration.

### I. The ALJ's Consideration of Johnson's Subjective Symptoms

An ALJ "must consider subjective complaints of pain if a claimant has established a medically determinable impairment that could reasonably be expected to produce pain." *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir 2014). "[W]here medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the

claimant's allegations." *Zurawski*, 245 F.3d at 887. If an ALJ concludes that a claimant's subjective allegations are inconsistent with the evidence, he "must explain perceived inconsistencies between a claimant's activities and the medical evidence." *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Ultimately, the ALJ's role is to provide a "fair and impartial presentation" of the evidence" in order to "permit an informed review." *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986) (internal citations omitted).

Here, the ALJ's decision is problematic for at least two reasons. First, there is little discussion of Johnson's subjective reports of pain at anything but the most superficial level. I am left to evaluate whether the ALJ had substantial evidence to support his conclusion that Johnson's symptoms were not as severe as alleged without the ALJ ever *saying* how severe those symptoms were alleged to be. The ALJ mentions Johnson's complaints of back pain several times, but he does not discuss the ways Johnson has alleged that this pain interferes with her daily activities. That's important because Johnson has claimed very substantial limitations in her daily activities. For example, she stated that she has not performed chores or household activities in a year; she has claimed she cannot use stairs; she has claimed that she cannot sleep through the night or even bathe on her own; and she has claimed that she cannot even stand up from a chair without assistance. But without reading the hearing transcript, I would not know any of these allegations because the ALJ never mentions them. Notably, Johnson made similar reports to the psychological consultant, indicating that her daily routine consisted of lying on the couch with a heating pad. Even trying to make a bowl of oatmeal caused her pain, and she'd given up all her hobbies. R. 471. It also appears that the psychological consultant witnessed Johnson requiring the aid of her companion to walk "arm in arm" to and from the consultant's office to their car. R. 470. The ALJ has not

provided sufficient explanation to permit an informed review of his conclusion that Johnson's statements about her limitations were inconsistent with the evidence.

A second issue evident from the ALJ's decision involves an apparent overreliance on medical findings that do not actually undermine the plaintiff's statements about her symptoms. A few notable examples include the ALJ's finding that Johnson had "a negative Romberg sign despite a slow antalgic gait," and Johnson's doctor's note that she was "fully active and able to carry on all pre-disease activities without restriction." R. 18. A physician performs a Romberg test[3] to rule out neurological conditions that could cause a person to lose balance. There is no evidence to suggest that Johnson was ever suspected of having a neurological condition like this; Johnson admits that her fall was caused by slipping on ice, and even if that were not the case, the cause of her fall, whether neurological or physical, does not impact the seriousness of the injury *resulting* from that fall. In short, a negative Romberg sign does not call into question her reports of major limitations.

As to Johnson's doctor's statement releasing her to all activities without restriction, the ALJ eliminated vital context when he relied on that statement. Specifically, the doctor making this statement was an *oncologist* treating Johnson for thrombocytopenia, a condition causing a low platelet count in a patient's blood. *See* ECF No. 12 at 11 (discussing thrombocytopenia). There is no indication that this doctor knew of or was qualified to render an opinion on Johnson's *musculoskeletal conditions*—the primary conditions causing her alleged disability—or that the doctor was referring to any disease other than her blood cell count when he referred to "pre-disease activities." In choosing to discuss this "negative Romberg sign" and an out-of-context statement by an oncologist as crucial evidence supporting a

---

[3] https://my.clevelandclinic.org/health/diagnostics/22901-romberg-test

finding of non-disability, the ALJ has relied on largely irrelevant clinical findings to undercut the plaintiff's statements about her condition.

Because the ALJ failed adequately to discuss Johnson's subjective symptoms and daily activities, and because some of the medical findings he relied upon do not contradict her statements about her symptoms, the ALJ has failed to build an accurate and logical bridge from the evidence to his conclusions. As such, I will reverse and remand for further consideration.

## CONCLUSION

For the foregoing reasons, I find that the ALJ has reversibly erred. Thus, I **REVERSE** the Social Security Commissioner's final decision and **REMAND** the matter to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision.

**SO ORDERED** this 22nd day of August, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge